NORA NEARNS, APPELLANT, v. D. C. DANNER, RESPONDENT.—31 S. W. (2d) 102.

Springfield Court of Appeals. September 12, 1930.

*Chas. B. Butler,* for appellant.

*George D. Sloan* for respondent.

SMITH, J.—This suit originated in a justice of the peace court based upon an account in which the plaintiff claimed the defendant owed her $52.25 for fifty-two bushels and one peck of corn at one dollar per bushel. No answer was filed, and a trial resulted in a verdict and judgment for the defendant, and upon appeal to the circuit court another trial was had and judgment was again had for the defendant, and by proper steps an appeal was taken to this court. The contention of the plaintiff was that her father, Lee Young, and her mother, Martha Young had entered into a contract with her whereby they had turned over to her the use of their farm in Ripley county, together with certain live stock thereon, and that she was to have for a period of five years, the proceeds from the farm and the profits from the live stock, for which she was to pay the interest on a farm loan, taxes on the farm, and maintain and care for her parents.

The testimony clearly shows that the defendant went upon the premises and took the corn, and plaintiff contends that the corn was hers by the reason of the contract with her parents, and that the defendant had no right to the corn, and that it was worth one dollar per bushel, and that the defendant was indebted to her for the amount of the corn.

She offered other witnesses as to the terms of the contract with her parents and that she was complying with her part of the agreement, and as to the value of the corn. The defendant testified that he did not know the plaintiff claimed any interest in the corn, and that Lee Young owed him a note and promised to pay it when he gathered his corn, and that on the day before he got the corn he saw Young and asked him when he could get the corn and he told him that he could get it any time he wanted it, and that he told Young that he would get it the next day, and that he agreed to pay ninety cents a bushel for the corn.

George Danner, a brother of the defendant testified that he heard Lee Young say two or three times that he was going to let the defendant have corn to pay the note. Will Davis testified to practically the same thing as George Danner. B. I. Hensley heard Lee Young tell the defendant he could have corn in settlement of the note and that he could get it any time he wanted it, and that Danner said he would go get it the next morning, and that he heard Young tell him that if he didn't come down to go with him for the corn that it would be alright for, Danner to go ahead and get the corn.

The defendant offered J. A. Cline as a witness. He testified that he was a tenant on the farm for five years under contract with Lee Young, and that he had been on the farm three years when the defendant got the corn in 1928, and that he had no notice that the plaintiff had any control of the farm up to the time he left the place;

that he cultivated the place to suit himself under the lease with Young, and stored the rent corn on the place separate from his own part.

Myrtle Cline, the wife of the tenant testified that she lived on the place from 1926 to 1929, and that no statement was made to her that the corn belonged to the plaintiff.

The plaintiff used Lee Young in rebuttal who testified that he entered into the contract with his daughter on May 5, 1928, and his testimony as shown by the abstract is as follows: "That at the North End filling station Danner asked him if the corn was gathered and he told him it was; that he wanted him to let him have some corn on the note and he told him if he let him have the corn on the note that he would meet him at the mill in the morning and tell him whether he could have the corn or not; that he went to the mill and not finding anyone there wrote a note and stuck it in the door telling him that he would not let him have any corn as it belonged to his daughter, Mrs. Nearns; that he did not authorize him to go get it; that it was not his corn, that he did not own it; that Danner made the statement that he would go get the corn if I did not go, and I told him if I let him have the corn I would be there."

He also denied the conversation testified to by George Danner. He said it was about ten days after the defendant got the corn before he knew it, and that he then went to the mill with the plaintiff to see the defendant about the corn and asked him by what authority he got the corn, and that the defendant said he thought it would be all right. He also testified that no agreement was had about the price of the corn and that nothing was said about the price.

The defendant upon being recalled said that when Young asked him who authorized him to get the corn that he told him that he had told him to get it and that if he had not told him to get it he would not have done so, and that that was the first time he knew that Mrs. Nearns claimed the corn.

From the foregoing it may be seen that it was a question of fact for the jury as to the ownership of the corn, and as to whether the defendant had bought the corn from the proper owner. The plaintiff did not request any instruction, so far as the record shows, and the two instructions given at the request of the defendant properly submitted these questions to the jury and since the verdict is based upon these controverted facts, it is not for this court to interfere with the judgment. [Haack v. Hammer, 221 Mo. App. 380, 283 S. W. 741.]

The judgment should be affirmed. It is so ordered. *Cox, P. J.,* and *Bailey, J.,* concur.